**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **NICOLE STULL AND DENISE KIM,**<br>    **Plaintiffs**<br><br>       **v.**<br><br>**GOLDMAN, ANTONETTI & CORDOVA, P.S.C.,**<br>    **Defendant** | **Civil No. 03-1025 (PG)** |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiffs, Nicole Stull and Denise Kim filed this lawsuit against the law firm of Goldman, Antonetti & Córdova, P.S.C. alleging breach of contract and negligent rendering of legal services. Jurisdiction is grounded in diversity pursuant to 28 U.S.C. § 1332.

On March 24, 2004, Goldman, Antonetti & Córdova, P.S.C. (hereafter "GAC") filed a motion to dismiss the complaint for lack of subject matter jurisdiction (**Docket No. 41**). The plaintiffs oppose the motion and GAC filed a reply to the opposition (**Docket Nos. 80, 81, 86**). Thereafter, on April 26, 2005, the motion was referred to the undersigned for a Report and Recommendation (**Docket Nos. 87, 88**).

### I.   The Complaint

The complaint is brought by Nicole Stull (hereafter "Stull"), resident of the state of New York and Denise Kim (hereafter "Kim") resident of the state of Massachusetts, against GAC, a law partnership licensed to practice law in Puerto Rico. The complaint alleges that on May 7, 2001, Stull and Kim entered into a written agreement with GAC and hired it to render them legal services to facilitate the establishment of a night club in Puerto Rico. The tasks to be performed by GAC included obtaining the required permits, licenses, authorizations and other paperwork for the establishment and development of the business. On July 5, 2001, GAC informed Stull and Kim that it would also provide legal services for the lease of the proposed business site, and on September 20, 2001, a proposed lease was delivered by the law firm for its review. Thereafter, from September 20, 2001, through

October 18, 2001, GAC provided legal services to Stull and Kim.  It is alleged that after October 18, 2001, GAC provided legal services by obtaining governmental permits and necessary approval and advised and encouraged Stull and Kim to incur in substantial costs in the development of the night club by advising that the issuance of government permits or authorization was imminent.

The night club was scheduled to open in December 2001, but it did not because applicable laws and regulations prohibited the establishment and development of a night club on the selected premises.  Instead a substitute business, a restaurant, opened in August 2002.

Count One of the Complaint alleges a breach of contract by GAC in that it failed to conduct adequate research regarding the law and regulations governing the development of the night club, failed to determine that laws and regulations prohibited the development of a night club on the leased premises, and failed to advise Stull and Kim not to enter into the lease agreement for the site of the night club.

Stull and Kim seek damages including monies expended for the cost to renovate and prepare the premises for the night club; to advertise the opening of the night club;  for the legal fees incurred and  paid; and landlord related costs.  Stull and Kim seek to recover the monies paid in rent from January 2002 until the time a restaurant was opened as a substitute business on August 2002. They also seek the monthly differential between the space and monthly rent on the leased premises and the space and monthly rent they would have reasonably paid for the type of substitute business operated at the premises.  Finally, the plaintiffs seek indemnification by GAC for the loss of net profits from the operation of the nightlight based upon reasonable business projections.

Count Two of the Complaint, the negligence count[1], in general alleges that GAC was negligent in providing legal services to Stull and Kim.  The plaintiffs seek damages in Count Two as they do in Count One.

---

[1] Although it has not been raised, it appears that the negligence claim may be barred by the applicable one year limitation period.

**II.      Motion to Dismiss**

GAC moves for dismissal pursuant to Fed.R.Civ.P. 12(b)(1), (7) and 19 arguing that there is no subject matter jurisdiction. It contends that the plaintiffs failed to join a necessary and indispensable party, Act 2, Inc. (hereafter "Act 2"), a Puerto Rico corporation, and that upon the joining of this party, complete diversity jurisdiction is destroyed so that dismissal is proper under Rule 12(b)(7).   In the alternative, GAC submits that at the time the instant complaint was filed, and because Stull and Kim were domiciled in Puerto Rico there was not complete diversity, again making dismissal appropriate, but under Rule 12(b)(1).

Plaintiffs respond that at the time the complaint was filed on January 10, 2003, they were not domiciled in Puerto Rico and that neither of them had the intent to maintain a permanent residence in Puerto Rico.  Stull further contends that the motion to dismiss fails to establish any basis for dismissing the diversity action[2].

No response was made by plaintiffs to GAC's position that plaintiffs failed to include "Act 2" as an indispensable and necessary party to the litigation.   The Local Rules of the United States District Court for the District of Puerto Rico provide that unless the opposing party files written objection, the opposing party shall be deemed to have waived objection. *L.Cv.R. 7.1(b).*  Further, any objection shall include citations and supporting authorities and affidavits and other documents setting forth or evidence facts on which the objection is based. *Id.*

**A.      Standards for Dismissal**

Under Rule 12(b)(1), a defendant may move to dismiss an action against it based on the lack of federal subject matter jurisdiction. *See* Fed.R.Civ.P. 12(b)(1).  Since federal courts have limited jurisdiction, the party asserting jurisdiction has the burden of demonstrating the

---

[2]Counsel for plaintiffs advises the Court that on August 6, 2004, plaintiff Denise Kim filed a bankruptcy petition in the United States Bankruptcy Court, Eastern District of Massachusetts, Docket No. 04-16513, and that the Bankruptcy Court appointed Mark J. DeGiacomo as the United States Trustee. Under the bankruptcy code, Trustee DeGiacomo succeeds to the interest of Denise Kim in the litigation.  Counsel further advises that he has not been retained to represent the Bankruptcy Trustee in this litigation.  The Docket Sheet for 04-16513 indicates that an order discharging debtor(s) was entered on February 23, 2005. ***Docket No. 15***, *Bankruptcy Case No. 04-16513* (Bankr. D.Mass. Feb. 23, 2005).

existence of federal jurisdiction. *Sarboso Publ'g, Inc. v. Caiman Records Am., Inc.,* 141 F.Supp.2d 224, 226 (D.P.R. 2001) (citations omitted). In assessing a motion to dismiss for lack of subject-matter jurisdiction, a district court "must construe the complaint liberally, treating all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiffs." *Viqueira v. First Bank,* 140 F.3d 12 (1st Cir.1998) (citing *Royal v. Leading Edge Prods., Inc.,* 833 F.2d 1 (1st Cir.1987)). Additionally, a court may review any evidence, including submitted affidavits and depositions, to resolve factual disputes bearing upon the existence of jurisdiction. *Sarboso Publ'g,* 141 F.Supp.2d at 226 (citing *Land v. Dollar,* 330 U.S. 731, 734-35 (1947); *Aversa v. United States,* 99 F.3d 1200, 1210 (1st Cir.1996) (citation omitted); *Baker v. Westin Rio Mar Beach Resort, Inc.,* 194 F.R.D. 393, 395 (D.P.R.2000)). When deciding whether to dismiss a complaint for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), courts "may consider whatever evidence has been submitted, such as the depositions and exhibits . . . " *Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir. 1996).

Generally, a Rule 12(b)(7) motion is granted when there is an absent party without whom complete relief will not be possible in the case or whose interest in the controversy is such that to proceed without this party might prejudice it or the parties already present in the case. *Rivera-Rojas v. Loewen Group Int'l, Inc.*, 178 F.R.D. 356, 360 (D.P.R.1998) (citations omitted). The court may consider evidence outside the pleadings when ruling on a 12(b)(7) motion. *Id.* (citing *Albahary v. City of Bristol*, 963 F.Supp. 150, 156 n. 2 (D.Conn. 1997)). The movant has the burden of showing why the absent party should be joined. *Id.* (citations omitted). To meet this burden, the movant may submit affidavits or other relevant evidence. *Id.* at 360-361 (citing *Sunrise Fin., Inc. v. PaineWebber, Inc.*, 948 F.Supp.1002, 1006 (D.Utah 1996)).

### A. Jurisdiction

District courts have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States. 28 U.S.C. § 1332. Jurisdiction in this matter rests upon

the diversity of citizenship of the parties.  No federal question has been raised by the plaintiffs.   It has long been settled that a "lack of 'complete diversity' between the parties deprives the federal courts of jurisdiction over the lawsuit." *Casas Office Machines, Inc., v. Mita Copystar Am., Inc.*, 42 F.3d 668, 673 (1st Cir. 1995) (citations omitted).

> **B.     Indispensable Party**

The undersigned turns first to the issue of whether "Act 2" is an indispensable and necessary party to this civil action inasmuch as the issue is dispositive of this matter.  GAC posits that dismissal of this matter is appropriate because "Act 2", as the real party in interest, is an indispensable and necessary party to this action and the proper joinder of this corporation will defeat diversity jurisdiction.  A noted above, Plaintiffs did not respond to this portion of the Motion to Dismiss.

Rule 12(b)(7) of the Fed. Rules of Civil Proc. allows dismissal for failure to join a party under Rule 19.  Pursuant to Rule 19 a two-step analysis is employed. *Pujol v. Shearson Am. Express, Inc.*, 877 F.2d 132, 134 (1st Cir. 1989).  First, the court  determines whether a person fits the definition of those who should "be joined if feasible". Fed.R.Civ.P. 19(a); *Pujol*, 877 F.2d at 134.  Under 19(a) a person should be joined when feasible:

> if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P. 19(a).

Since Rule 19(a) is phrased in the disjunctive, a party is necessary (i.e. fits the definition in 19(a)),  if it meets the requirements of either 19(a)(1) or 19(a)(2). *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 405 (3d Cir. 1993).  If a party is not a necessary one under Rule 19(a), it cannot be an indispensable one under 19(b), and the analysis ends. *Delgado v. Plaza Las Américas*, 139 F.3d 1, 3 n. 2 (1st Cir. 1998).  If the court decides that an absent party is a "necessary party," the Court must then determine whether the "necessary party's" joinder

is "feasible." *Generadora De Electricidad Del Caribe, Inc. v. Foster Wheeler Corp.*, 92 F.Supp.2d 8, 15 (D.P.R. 2000). This requires the court to determine whether the absentee is subject to service of process and whether the absentee's joinder will deprive the court of jurisdiction over the subject matter of the action. *Id.* If joinder is feasible, the Court will order the party's joinder. *Id.*

If a person fits the definition of 19(a), but joinder is not feasible, the Court must proceed to the second step, and consider whether the party is "indispensable" under 19(b). *Pujol*, 877 F.2d at 134. Determining whether a party is "indispensable" is equivalent to determining whether "in equity and good conscience the action should proceed among the parties before it, or should be dismissed." Fed.R.Civ.P. 19(b). *See also Pujol,* 877 F.2d at 134; *Provident Tradesmens Bank v. Patterson,* 390 U.S. 102, 119 (1968); *Acton Co., Inc. of Massachusetts v. Bachman Foods, Inc.,* 668 F.2d 76, 78 (1st Cir.1982). This determination is guided by the four (4) factors set forth in Rule 19(b):

> [F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person of those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19(b).

In the end, it is the Court that must make all final determinations on compulsory joinder of a party. Regardless, it is the moving party's burden, here GAC, to show the Court the nature of the absentee's unprotected interests or the prejudice to be suffered by the movant due to the non-joined party's absence. *See Ilan-Gat Eng's, Ltd. v. Antigua Int'l Bank,* 659 F.2d 234, 242 (D.C.Cir. 1981). *See also McCann v. Ruiz,* 788 F.Supp. 109, 121 (D.P.R.1992).

As discussed above, when ruling on a Rule 12(b)(7) motion the Court may consider evidence outside the pleadings, and GAC has provided plenty in support of its position, and all of it is uncontroverted. This evidence shows as follows. GAC was retained to provide legal services in May, 2001. Kim testified during her deposition that GAC was contacted and

retained because she and Stull were interested in starting a business and one of the elements included the creation of a corporation. Kim further testified that she wanted GAC "to represent her because she was the company", but that it was also her understanding that GAC in some capacity was also representing the corporation.

"Act 2" was incorporated on July 3, 2001, with its general purpose being stated as "the operation of a night club" that was to operate under the name "Bliss".  The incorporator of "Act 2" was Stull.  Kim was designated as the resident agent, and they were also its directors.  Later, Kim was designated Act 2's President, and Stull was designated its Secretary and Treasurer.  Kim testified that the stock in "Act 2" was owned equally between she and Stull so that each of them held 50 percent of the stock and ownership of the corporation[3].  The address for the corporation was the address where Kim resided in Puerto Rico.

Kim testified at her deposition that the decision was made to incorporate because it was a "good means of being able to protect our personal assets, also . . . tax consideration[s]" were involved.  The business the plaintiffs intended to run through the corporation was the night club called Bliss.  When asked if "Act 2" had lost any property or income that might be related to this litigation Kim opined that in her view, it was her personal loss because she personally injected working capital and monies into the corporate books and also provided monies that did not go into the company's books and records.

The plan was to open Bliss on the premises located at 66 Luisa Street, Old San Juan with such objectives, a lease was entered into on October 20, 2001 between Sixty-Six Luisa St., Inc. and/or José Luis Collazo López as the Landlord and "Act 2, Inc." and/or Denise Kim and Nicole Stull as Tenants.  Kim, who handled the execution of the lease,  testified that "Act 2" was not a party to the lease, and the name "Act 2" on the lease did not mean anything.  She testified that she and Stull signed the lease personally, not as representatives of the

---

[3]Court documents filed in the Carolina Superior Court of the Commonwealth of Puerto Rico indicated and  represented to the Court that as of October 20, 2003, Stull had ceded her proprietary interest in "Act 2, Inc." to Kim (**Docket No. 41**, Ex. 34, Motion Requesting Period to Notify Whether Legal Representation will Continue).  Conversely, Kim testified on October 30, 2003, that she owned 50 percent of the stock in "Act 2".

corporation and that "Act 2" was not involved in the lease. This testimony contradicts a letter sent by Kim to GAC, dated October 24, 2001, that states, "Please find attached a copy of "Act 2, Inc." lease agreement for the 66 Luisa Street property". When confronted with the discrepancy Kim testified that she was obviously incorrect in writing such statement because the landlord would not sign the lease agreement if the company was involved. Yet, she also testified that it was her intent to sign the lease as the representative of "Act 2".

Two bank accounts were opened in the name of "Act 2"; one at Citibank and one at Doral Bank. Act 2's expected profits were to be deposited into these accounts. Additionally, "Act 2" obtained an Employer Identification Number, was issued a state employer account number by the Commonwealth of Puerto Rico Department of Labor, was the beneficiary of State Insurance Fund coverage for its employees, obtained a lease bond No. 31021022 from Integrand Insurance Co. which was issued in Act 2's name, obtained insurance coverage for the business operations of Bliss, and obtained a liquor license and other necessary business permits for Bliss. "Act 2" also retained the professional services of law firms, surveyors, real estate brokers and accounting firms, and hired employees. "Act 2" filed a 2002 Corporate Annual Report and an Annual Declaration of Volume of Business.

During their July, 2003 depositions, both Stull and Kim testified that "Act 2" was no longer conducting business, and Kim also testified that Bliss had ended or ceased to exist in April, 2003. Nonetheless, Kim testified during her October 30, 2003 deposition that the corporate entity, "Act 2, Inc.", had not been dissolved.

Finally the evidence on record reveals that "Act 2, Inc." was sued in the local courts in two separate lawsuits for recovery of monies owed. A judgment in the amount of $146,265, was entered in one lawsuit for eviction and breach of contract in connection with the lease agreement signed with the landlord of 66 Luisa Street, Inc. This lawsuit was brought against "Act 2, Inc.", Kim and Stull and the matter was on appeal at the time of the filing of the instant motion to dismiss. The second lawsuit was brought against Act 2., Inc. d/b/a Bliss for monies owed for advertising, marketing and event planning services for "Act 2, Inc.". Judgment in

the amount of $51,676 was entered against Act 2, Inc. d/b/a Bliss on December 19, 2003. Filings in these two lawsuits indicate that as of January 8, 2004, "Act 2" was an active participant in the ligation.

GAC argues that "Act 2" is a necessary party because it is a party to the contract for legal services allegedly breached by defendant GAC, and to the lease agreement for the property in Old San Juan.  Its position is that "Act 2", as the real party in interest, is entitled to assert the claims set forth in the Complaint.

After reviewing the evidence submitted by GAC and reviewing the Complaint one thing comes to mind;  the blaring omission of "Act 2, Inc." Nowhere in the Complaint is it mentioned.  This, despite the plethora of evidence that the business entity Bliss was run through it, that "Act 2" was the beneficiary of legal services rendered by GAC, debts were incurred by "Act 2", Kim put working capital into the corporation, and judgments were entered against it as a result of debts incurred in the operation of Bliss.

To date, there is no evidence that the corporate entity, "Act 2", has been dissolved. Stull and Kim have not made such allegation.  Kim testified at her deposition in October, 2003, that the corporation had not been dissolved, a certificate of dissolution issued by the Puerto Rico Secretary of  State has not been produced, and as of January, 2004, "Act 2" continued its corporate presence in its participation in the lawsuit filed against it in Puerto Rico courts.

Generally, in a breach of contract action, all parties to the contract are necessary ones. Rivera-*Rojas v. Loewen Group Int'l, Inc.*, 178 F.R.D. 356, 361 (D.P.R. 1998) (citations omitted). The complaint alleges breach of contract and negligent rendering of legal services by GAC. A review of plaintiffs' claim and the evidence submitted by GAC leads to the conclusion that "Act 2" is a necessary party whose presence is needed for full adjudication of the controversy. The plaintiffs allege that GAC breached its contract when it provided to them inappropriate legal advice that resulted in the execution of lease for the premises where Bliss was to be operated.  Kim testified that GAC, in some capacity represented "Act 2".  Although Kim does not believe that "Act 2" is a party to the lease for the Bliss premises, "Act 2" is named in the

lease and a judgment was entered against it for monies owed for nonpayment of rent and breach of the lease contract. Also, that very lease is named as a source of damages in the complaint. More so, Plaintiffs seek damages for monies spent on advertising, yet court documents indicate that a judgment was entered only against only "Act 2", and not the plaintiffs, for those monies owed.

Clearly, Act 2's presence and participation is required in this litigation, and it certainly has an interest in the litigation of the issues raised by plaintiffs. The Plaintiffs' decision to operate their business in corporate form, rather than as a partnership, does not change this outcome. The corporate form is advantageous in many respects, including that of limitation of personal liability. *Ferrer v. Carricarte,* 751 F.Supp. 1032, 1034 (D.P.R.1990) (citing 14 P.R.Laws Ann. § 421 *et seq.).* Indeed, a ruling in plaintiffs' favor could put monies in their pockets, when the monies might rightfully belong to "Act 2". It appears that plaintiffs are, as the First Circuit Court of Appeals aptly put it, "attempting to use the corporate form both as shield and sword at [their] will", and this is not permissible. *Id.* (quoting *Alford v. Frontier Enterprises, Inc.,* 599 F.2d 483, 484 (1st Cir. 1979). In choosing the corporate form, the plaintiffs have reaped its benefits; they may not now disregard its existence in order to avoid its disadvantages. *Id.* (citing *Terry v. Yancey,* 344 F.2d 789, 790 (4th Cir.1965). "Act 2" is a necessary party under Rule 19(a) and should be joined to this litigation. Accordingly, we turn to the next step of the analysis: whether joinder is feasible.

It is undisputed that "Act 2" was incorporated in Puerto Rico and that it conducts business in Puerto Rico. For purposes of determining whether jurisdiction is properly asserted on the basis of diversity, a corporation is considered to be a citizen of its state of incorporation as well as the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). Here, "Act 2" meets both factors, and it is clear that under the laws of diversity, "Act 2", is domiciled in Puerto Rico. Joinder of "Act 2" as a party, however, is not feasible inasmuch as, its domicile is the same as that of the defendant GAC, and joining it as a party plaintiff would destroy complete diversity.

Because joinder is not feasible, the Court must now determine whether "Act 2" is also indispensable under the criteria outlined in Rule 19(b), set forth hereinabove. The interests promoted by the criteria in Rule 19(b) are: the interests of the outsider whom it would have been desirable to join; the defendant's interest in avoiding multiple litigation, inconsistent relief, or sole responsibility for a liability it shares with another; the interest of the courts and the public in complete, consistent, and efficient settlement of controversies; and, the plaintiff's interest in having a forum. *Provident Tradesmens Bank & Trust Co., v. Patterson*, 390 U.S. 102, 108-11 (1968);. *H.D. Corp. v. Ford Motor Co,* 791 F.2d 987, 992 (1st Cir. 1986); *Rivera-Rojas v. Loewen Group Int'l, Inc.,*178 F.R.D. 356, 362 (D.P.R. 1998). Applying these criteria to the facts of this case supports a finding that "Act 2" is an indispensable party.

First, "Act 2" would suffer prejudice if this action were to continue since it appears to be involved in contracts that are at the heart of this litigation. As this District Court has stated, "[a] contracting party is the paradigmatic example of an indispensable party". *Rivera-Rojas*, 178 F.R.D. at 362. Secondly, a judgment absent "Act 2" would subject GAC to multiple litigation. Its interest in avoiding multiple litigation and inconsistent verdicts weighs in favor of dismissal. As the case stands now, a finding in favor of the plaintiffs would not preclude Act 2 from bringing a new claim against GAC. Further, it is apparent that the Puerto Rico courts have the ability to resolve this dispute, since it is brought under Puerto Rico law for breach of contract and negligence. Also, the matter could be more simply resolved by a single lawsuit, rather than by piecemeal litigation. Finally, an adequate alternative forum exists in the local courts. Indeed, the local courts have already heard two cases brought against "Act 2", and one of those cases included three defendants; Stull, Kim and "Act 2". Since plaintiffs' claim can be resolved competently in the state courts, it follows that an adequate remedy is available to plaintiffs in that forum. The criteria for determining the indispensability of "Act 2", a non-diverse party has been met.

GAC has met its burden of showing that "ACT 2" is a necessary and indispensable party to this case. Therefore, it is RECOMMENDED that the Motion to Dismiss pursuant to

Fed.R.Civ.P. 12(b)(7) and Rule 19 be **GRANTED,** and that this matter be dismissed, without prejudice to having the claim filed in the Puerto Rico Courts.

### A.     Complete Diversity

In the alternative, GAC moves for dismissal on the basis that at the time of the filing of the complaint, and because Stull and Kim were domiciled in Puerto Rico, there was a lack of diversity among the parties.  The plaintiffs respond that the evidence does not support a finding that they intended to establish a permanent domicile in Puerto Rico.

As is well known, federal courts have jurisdiction over controversies arising between "citizens of different states,"  provided that the amount in controversy exceeds \$75,000. 28 U.S.C. § 1332(a)(1). "Citizenship is determined by domicile, which can be established by demonstrating that the individual is physically present in the state and has an intent to remain indefinitely."  *García-Pérez v. Santaella*, 364 F.3d 348, 350 (1st Cir. 2004) (citations omitted). Once challenged, the party invoking diversity jurisdiction must prove domicile by a preponderance of the evidence. *Id.* (citing *Bank One, Texas v. Montle,* 964 F.2d 48,  50 (1st Cir. 1992). The main inquiry is whether diversity of citizenship existed at the time the suit was filed, and while subsequent events may bear on the sincerity of a professed intention to remain, they are not part of the primary calculus.  *Id.*  at 351 (citations omitted).

There is a presumption in favor of continuing domicile.  *Bank One, Texas*, 964 F.2d at 50  (citations omitted).   The relevant standard is domicile, not mere residence inasmuch as a party may reside in more than one state but can be domiciled, for diversity purposes, in only one.  *Id*. at 54.  More so, "a person's domicile is the place where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning'."*Id.* (quoting *Rodríguez-Díaz v. Sierra-Martínez,* 853 F.2d 1027, 1029 (1st Cir.1988) (other citations omitted).  In determining domicile, courts may consider a variety of factors that indicate the extent of a particular party's ties to the purported domicile, including current residence; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations,

churches, clubs and other associations; place of employment or business; driver's license and other automobile registration; [and] payment of taxes. *García-Pérez,* 364 F.3d at 350 (citations omitted). However, no single factor is dispositive, and the analysis focuses not simply on the number of contacts with the purported domicile, but also on their substantive nature. *Id.* (citations omitted). Worth noting is that some courts have established a presumption of domicile in the state in which a party is registered to vote. *Bank One, Texas*, 964 at 50 (citations omitted). The First Circuit court has not recognized such a presumption, but has stated that the place a person is registered to vote is a "weighty" factor in determining domicile. *Id.* (1st Cir. 1992) (citing *Lundquist v. Precision Valley Aviation, Inc.,* 946 F.2d 8, 12 (1st Cir. 1991).

The evidence before the Court is that at the time of the filing of the complaint on January 10, 2003, Stull was a registered voter of New York, held a New York driver's license, and maintained checking and savings accounts in New York. She also was certified on August 6, 2003, as having been a resident of New York for a period of a least one year for purposes of college enrollment. Stull was never issued medical insurance in Puerto Rico. Stull states in her affidavit of October 27, 2004, that she always intended her domicile to be New York and had no intent of establishing it in any other place. She states that she temporarily resided in Puerto Rico for the purpose of attempting to develop professional objectives and not with the intent of permanently establishing a domicile in Puerto Rico.

Both Stull and Kim signed sworn statements in early November, 2001 for the Puerto Rico Treasury Department. Stull's stated that she had lived in New York all her life and that she moved to Puerto Rico on January 17, 2001. Kim stated that she lived in New York until June, 2000, temporarily moved to Massachusetts for seven months until February, 2001 and then moved to Puerto Rico on February 25, 2001. Stull and Kim both leased apartments in the San Juan Area. Stull signed a yearly lease for an apartment beginning in January, 2001, and renewed it twice, the last renewal signed on January 16, 2003, and was effective for an additional 12 months. Stull testified during her deposition on July 10, 2003, that she came to Puerto Rico to establish a business and rented the apartment to be in the district for that

purpose. Stull testified that she had been present in Puerto Rico since January 2001, and that as of the date of the deposition it was still ongoing. Stull has a vehicle registered in Puerto Rico, and she also had utility bills in her name in Puerto Rico. Stull did not file state income tax returns for the years 2001 and 2002 because she had no income during those years, however, her father claimed her as a dependent on his 2002 tax return. As of January 10, 2003, Stull had two bank accounts in Puerto Rico, one since has been closed. Also as of January 10, 2003 Stull kept her personal belongings, such as furniture, clothing and jewelry in both New York and Puerto Rico.

At her deposition on July 29, 2003, Kim testified that she had entered into one long term lease agreement dated from December 2001 to December 2002. After the lease term expired in December 2002, Kim continued to stay in the apartment on a monthly basis until the end of March, 2003. Kim indicated that the apartment was leased in Puerto Rico because she was in Puerto Rico to take care of the business (i.e. Bliss). Kim added that there were difficulties in obtaining the business and as a result her continued presence was needed in Puerto Rico. When Kim first came to Puerto Rico in August, 2000, she stayed with Stull until she leased an apartment in December, 2001. During the time she stayed with Stull, Kim traveled home back and forth several times.

Kim testified that she lived with her sister in Massachusetts and had lived there for approximately three years, from May, 2000 until the present. She stated that prior to May, 2000 she lived in New York City. This testimony is contradicted by an electronic communication authored by Kim on November 2, 2001, wherein she indicated that she lived in New York City for seven years until June, 2000 when she temporarily moved to Massachusetts for seven months. Kim states that in February, 2001 she permanently moved to Puerto Rico. The same electronic communication refers to Stull but does not state that Stull permanently moved to Puerto Rico. Rather, Kim indicates that Stull lived in New York "all her life".

  Information on record reflects that Kim did not file personal income tax returns in Puerto Rico for the years of 2001 or 2002. For those two years she filed state income tax returns in New York, not Massachusetts where she indicated she had lived since 2000. Kim, however, owns a car in Massachusetts. As of January, 2003; Kim had one bank account in Puerto Rico.

  As to Stull, she has met her burden by a preponderance of the evidence and as established that at the time of the filing of the complaint, she was domiciled in New York. The totality of the evidence points to the fact that Stull continued her domicile in New York, never severed her ties with New York, and had no intention of making Puerto Rico her domicile. Although she leased an apartment in Puerto Rico, utility bills were in her name, and some of her personal effects, including a car, were located in Puerto Rico, this does not mandate a conclusion that Stull was domiciled in Puerto Rico. In sum, an evaluation of the relevant factors under the preponderance of the evidence standard leads to the conclusion that Stull was domiciled in New York at the time the complaint was filed.

  Kim's domicile is a close question. Because Kim has invoked diversity jurisdiction and it has now been challenged by GAC, it is up to Kim to prove by a preponderance of the evidence that diversity jurisdiction is warranted. Based upon the preponderance of the evidence presented, the undersigned finds that Kim has met her burden. Granted, Kim stated in an email that she "permanently" moved to Puerto Rico. Nonetheless, her sworn testimony is that she had no intent of residing permanently in Puerto Rico and was here solely to develop a business. More so, she signed only a one year lease while in Puerto Rico and at its expiration rented on a "month to month" basis. This certainly is not an indication of an intent of establishing permanent domicile.

  This determination has no effect on the outcome of the case due to the undersigned's previous finding that "Act 2, Inc." is an indispensable party to the case and whose joinder defeats complete diversity.

### III. Conclusion

Based upon the foregoing analysis, this Magistrate-Judge **RECOMMENDS** that the Motion to Dismiss (**Docket No. 4**1) be **GRANTED**, and that this matter be dismissed, without prejudice to filing the claim in the Puerto Rico Courts.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(a) of the Local Rules of Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within ten (10) days** of notice. Rule 72(d), Local Rules of Court; Fed. R. Civ. P. 72(b). Failure to timely file specific objections to the Report and Recommendation waives the right to review by the District Court, and waives the right to appeal the District Court's order. *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980). The parties are advised that review of a Magistrate-Judge's Report and Recommendation by a District Judge does not necessarily confer entitlement as of right to a *de novo* hearing and does not permit consideration of issues not raised before the Magistrate-Judge. *Paterson-Leitch v. Massachusetts Elec.*, 840 F.2d 985 (1st Cir. 1988).

**IT IS SO RECOMMENDED**.

At San Juan, Puerto Rico, on this 17th day of August, 2005.

                                                                  S/**AIDA M. DELGADO-COLON**
                                                                   **U.S. Magistrate-Judge**